## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Darrell W. Titus, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | No. 11 C 00944 |
| TRANSPORTATION ("IDOT"), | ) | |
| BOB DUDA, individually and as an | ) | Judge Ruben Castillo |
| IDOT employee, GIOVANNI FULGENZI, | ) | |
| individually and as an IDOT employee, | ) | |
| DIANE M. O'KEEFE, individually and as | ) | |
| an IDOT employee, CHRISTI G. MEANS, | ) | |
| individually and as an IDOT employee, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Darrell W. Titus ("Plaintiff") brings this *pro se* action against the Illinois Department of Transportation ("IDOT"), and IDOT employees Bob Duda, Diane M. O'Keefe, Christi G. Means, and Giovanni Fulgenzi ("IDOT Employees"), (collectively, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981), and 42 U.S.C. § 1983 ("Section 1983"). (R. 30, Am. Compl. at 1.) Presently before the Court are two motions to dismiss, one by IDOT, Duda, O'Keefe, and Means pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and one by Fulgenzi pursuant to Rule 12(b)(6). (R. 31, IDOT's Second Mot.; R. 34, Fulgenzi's Second Mot.) For the reasons stated below, the motions are granted in part and denied in part.

### RELEVANT FACTS

Plaintiff is a black resident of South Holland, Illinois.[1] (R. 1, Compl. at 6-7.) Plaintiff is employed by IDOT as an ETP Driver or Highway Maintainer. (*Id.* ¶¶ 3, 5; *id.* at 7, 45) This dispute stems from at least 2009, when Plaintiff was written up by Duda. (R. 30, Am. Compl. ¶ 4.) According to a June 8, 2009 statement of charges, Plaintiff's supervisor gave Plaintiff a radio order to assist another ETP driver. (R. 1, Compl. at 53.) Rather than follow the order, Plaintiff responded, "No, I'm not going over there I'm going home." (*Id.*) Upon returning to the garage, Plaintiff became disruptive. (*Id.*) On August 10, 2009, Plaintiff was suspended without pay for this incident for 15 days effective August 16, 2009, through August, 31, 2009. (*Id.* at 9-10, 19.) Plaintiff was suspended "for inefficient performance of duties, insubordination and disruptive conduct." (*Id.* at 19.) The suspension letter was authored by O'Keefe and signed by Fulgenzi. (*Id.*) Prior to Plaintiff's suspension, Plaintiff had filed charges of discrimination and/or retaliation with the EEOC in 2004, 2005, and 2006, and one civil suit. (*Id.* at 9, 39.)

Plaintiff alleges that other "similarly situated employees with similar charges or worse who were disciplined by [IDOT]," Fulgenzi, and O'Keefe received suspension times of shorter durations than Plaintiff received on August 10, 2009. (*Id.* at 10.) In support, Plaintiff points to the discipline that four white highway maintainers received between 2003 and 2006 for disorderly conduct, safety code violations, and/or insubordination. (*Id.* at 10-12.) According to

---

[1] Although Plaintiff did not include a statement of facts in his Amended Complaint or attach the set of exhibits that accompanied his Original Complaint to his Amended Complaint, Plaintiff specifically incorporated the facts from his Original Complaint into the Amended Complaint. (R. 30, Am. Compl. at 1.) Therefore, the Court relies on these facts and exhibits in deciding the motions to dismiss without converting them into motions for summary judgment. *Johnson v. Ghosh*, No. 10-6897, 2011 WL 2604837, at * 2 (N.D. Ill. June 30, 2011) (citing *Leslie v. Doyle*, 868 F. Supp. 1039, 1041 (N.D. Ill. 1994)). In their motions to dismiss and memoranda in support, Defendants have also relied on the facts contained in the Original Complaint. (R. 32, IDOT's Mem. at 3 n.1; R. 35, Fulgenzi's Mem. at 2 n.3.)

Plaintiff, three of the highway maintainers received suspension times of one day, while one highway maintainer received a suspension time of ten days. (*Id.*)

Additionally, Plaintiff alleges that on November 23, 2009, a C Shift Emergency Meeting was held. (R. 30, Am. Compl. ¶ 5; R. 1, Compl. at 9.) Duda informed the meeting participants that ETP drivers had been disconnecting tracking locater systems, known as "EAV systems," from their trucks. (R. 1, Compl. at 9.) Duda further informed the meeting participants that IDOT Schaumburg knew who the miscreant drivers were and that IDOT Schaumburg wanted to discipline those drivers. (*Id.*) At this meeting, Duda also stated that he and Anthony Dilacoua did not want to discipline the drivers so they talked IDOT Schaumburg out of disciplining the miscreant drivers. (*Id.*) According to Plaintiff, IDOT Schaumburg then decided to give all ETP drivers a warning and the purpose of the November 23, 2009 meeting was to convey this warning. (*Id.*) Plaintiff asked Duda why he had been written up and disciplined for rule infractions when other drivers had not been written up and disciplined. (R. 30, Am. Compl. ¶ 5; R. 1, Compl. at 9.) In response, Duda told Plaintiff, "That's the way it is!" (R. 30, Am. Compl. ¶ 5.) In support of Plaintiff's allegations that Duda informed the November 23, 2009 meeting participants that drivers had disconnected the tracking locators on trucks, Plaintiff provides the unsworn statements of two ETP Drivers supporting his version of events. (R. 1, Compl. at 28-29.)

On December 2, 2009, Plaintiff filed an internal complaint with IDOT, alleging that he had been discriminated against on the basis of race. (R. 1, Compl. at 22.) Plaintiff charged Duda, the Schaumburg Personnel Office, and Fulgenzi with discriminatory employment practices. (*Id.*) Specifically, Plaintiff identified the "Date of alleged discriminatory/harassment

3

practice[,]" as "Fifteen Days suspended[,] August 16, 2009 to August 31, 2009[.] Told of other

Drivers not being Discipline[d] in Emergency meeting on 23 Nov 09 by Bob Duda[.]" (*Id.*) On

December 10, 2009, IDOT's Bureau of Civil Rights ("Bureau") acknowledged receipt of

Plaintiff's charge of discrimination and notified him that a staff member would "be assigned to

investigate the merits of [Plaintiff's] charge." (*Id.* at 23.) According to a March 11, 2010 letter

to Plaintiff from IDOT, Means was assigned to investigate the merits of Plaintiff's charge. (*Id.* at

24.) Means and Edgardo A. Sobenes, both Civil Rights Specialists from the Bureau, interviewed

Plaintiff twice and a number of ETP drivers at the IDOT ETP offices. (*Id.* at 12.)

On November 29, 2010, Plaintiff filed a charge of discrimination with IDHR ("IDHR

Charges") and requested that the charge also be filed with the EEOC. (*Id.* at 7.) The EEOC

received the IDHR Charges on January 25, 2010. (*Id.* at 38-39.) In the IDHR Charges, Plaintiff

indicated that he was discriminated against on the basis of race and retaliated against for

engaging in protected activity. (*Id.*) Plaintiff identified the date of the discrimination as "11-23-

2009." (*Id.*) With respect to the particulars of the discrimination, Plaintiff stated:

> I have been employed by Respondent since October, 1994, most recently as an
> ETP Driver. I have filed EEOC charge numbers 210-2004-06727, 210-2005-
> 09065, 440-2006-01507 alleging discrimination and/or retaliation by Respondent.
> Subsequently, I have been disciplined and suspended for rule infractions while
> non-Black ETP Drivers who commit rule infractions have not been disciplined or
> suspended.
>
> I believe I have been discriminated against because of my race, Black and
> retaliated against for engaging in protected activity, in violation of Title VII of the
> Civil Rights Act of 1964, as amended.

(*Id.*)

On January 20, 2010, Plaintiff filed a charge of discrimination with the EEOC ("EEOC

Charges"). (*Id.* at 45-48.) Plaintiff identified two discriminatory actions. (*Id.* at 46.) First, in

"June or July 2009" Plaintiff stated that he had been "[w]ritten up for IDOT Rule Infractions by Bob Duda ETP Manager." (*Id.*) Second, on August 10, 2009, Plaintiff stated that he was "suspended for 15 days . . . by Giovanni Fulgenzi, Personnel Services Manager[,] and Diane M. O'Keefe, P. E. Deputy Director of Highway." (*Id.*) Plaintiff stated that he believed these actions were discriminatory because he had been "[t]old in C Shift Emergency meeting on 23 Nov 09 by Bob Duda ETP Manager that there were ETP Drivers disconnecting [EAV systems.]" (*Id.* at 46, 50.) In support of his EEOC Charges, Plaintiff attached a statement describing what occurred at the November 23, 2009 meeting. (*Id.* at 50.)

On August 18, 2010,[2] the EEOC sent a letter to Elbert Simon, the Bureau Chief, requesting "information and records relevant to the subject charges of discrimination." (*Id.* at 25, 63.) The EEOC requested the following from IDOT:

1.  Provide all documents related to the investigation into [Plaintiff's] December 10, 2009 internal complaint of discrimination.
2.  Identify by name and race each ETP Driver accused of disconnecting the EAV (tracking) System as stated during the emergency meeting held November 23, 2009 at the 3501 S. Normal, Chicago, Illinois facility.
3.  Provide copies of all disciplinary actions issued to ETP Drivers at the 3501 S. Normal, Chicago, Illinois facility during the period January 1, 2009 to August 1, 2010.

(*Id.* at 26, 63-64.) Plaintiff notes that in response to the EEOC's requests for information, Simon responded as follows:

1.  No investigation was accomplished on [Plaintiff's] internal complaint of discrimination.

---

[2] While the letter is dated August 18, 2009, the Court notes that the letter specifically references EEOC Charge No. 846-2010-20932, which is the number assigned to Titus's January 20, 2010 EEOC Charge. (R. 1, Compl. at 43.) The letter also appears to have been faxed to Simon on August 18, 2010. (*Id.* at 63-66.) Therefore, the Court believes that 2009 is a typographical error and the correct date is August 18, 2010.

2.      According to our investigative findings - there were no employees accused or named as having disconnected the Automatic Vehicle Location (AVL) tracking system during a meeting which was held of [sic] November 23, 2009. The district office stated that the AVL systems had not been checked in over a year and Meade Electric Company as one of the major electrical contractors in the Chicago land area had contracted with IDOT for the installation and maintenance of the devices in IDOT's trucks.

3.      Disciplinary actions issued to ETP Drivers are enclosed . . . .

(*Id.* at 27, 60.) Additionally, Plaintiff alleges that IDOT failed to provide the EEOC with Plaintiff's interview statements and the other ETP drivers' interview statements. (*Id.*) In short, Plaintiff avers that the Bureau failed to provide the EEOC with all the facts of the Bureau's internal investigation and that the withholding of this information is both discriminatory and retaliatory. (*Id.* at 13.) On November 18, 2010, the EEOC issued a Notice of Right to Sue letter. (*Id.* at 8.)

## PROCEDURAL HISTORY

On February 20, 2011, Plaintiff filed a *pro se* complaint of employment discrimination ("Original Complaint") alleging that Defendants had discriminated against him based upon his color and race and retaliated against him in violation of Title VII, Section 1981, and Section 1983. (R. 1, Compl. ¶¶ 9-10, 12.) On April 7, 2011, IDOT, Duda, O'Keefe, and Means filed a motion to dismiss Plaintiff's Original Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (R. 22, IDOT's First Mot.) On that same day, Fulgenzi also filed a motion to dismiss Plaintiff's Original Complaint pursuant to Rule 12(b)(6). (R. 25, Fulgenzi's First Mot.) On April 12, 2011, the Court granted both motions to dismiss without prejudice as to the filing of a proper amended complaint. (R. 28, Min. Entry; Status Hr'g Tr. at 6:14-16 Apr. 12, 2011.) The Court tolled the statute of limitations until Plaintiff filed his amended complaint. (R. 28, Min. Entry.)

On May 26, 2011, Plaintiff, *pro se*, filed an amended complaint ("Amended Complaint")

alleging that Defendants had discriminated and retaliated against him in violation of Title VII, IDOT's Personnel Policy Manual Administrative Rules ("IDOT's Administrative Rules"), and the State Officials and Employees Ethics Act, 5 ILCS 430 ("Ethics Act"). (R. 30, Am. Compl. ¶¶ 2-4.) In Count I, Plaintiff sets forth a claim of disparate treatment pursuant to Title VII and Section 1981 against IDOT and the IDOT Employees in their official capacities. (*Id.* at 3.) In Count II, Plaintiff brings a claim of retaliation pursuant to Title VII and Section 1981 against IDOT and the IDOT Employees in their official capacities. (*Id.*) In Count III, Plaintiff brings a claim of disparate treatment pursuant to Section 1983 against the IDOT Employees in their individual capacities. (*Id.*) In Count IV, Plaintiff sets forth a claim of retaliation pursuant to Section 1983 against the IDOT Employees in their individual capacities. (*Id.*) Finally, in Count V Plaintiff alleges a state law claim of intentional infliction of emotional distress against the IDOT Employees in their individual capacities. (*Id.*) While Plaintiff does not specify the type of relief he seeks in his Amended Complaint, his Original Complaint requested that the Court "[g]rant [the] maximum amount of [d]amages, as the law allows." (R. 1, Compl. ¶ 16.)

On June 9, 2011, IDOT, Duda, O'Keefe, and Means filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (R. 31, IDOT's Second Mot.) On that same day, Fulgenzi also filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) raising similar arguments. (R. 34, Fulgenzi's Second Mot.) As to Plaintiff's Section 1981 claims, Defendants argue that those claims are barred by the Eleventh Amendment. (R. 31, IDOT's Second Mot. ¶¶ 6-7; R. 32, IDOT's Mem. at 7-8; R. 34, Fulgenzi's Second Mot. ¶ 5; R. 35, Fulgenzi's Mem. at 4-5.) Defendants also argue that Plaintiff's Title VII, Section 1981, Section 1983, and intentional infliction of emotional distress claims should be dismissed

for failure to state a claim. (R. 31, IDOT"s Second Mot. ¶¶ 4-5, 8-9, 11; R. 32, IDOT's Mem. at 5-7, 9-11, 12-14; Fulgenzi's Second Mot. ¶¶ 4, 6-8.) As to any claims brought pursuant to the Ethics Act and IDOT's Administrative Rules, Defendants argue those claims should be dismissed because Plaintiff fails to state a claim and the Court lacks jurisdiction to hear the claims. (R. 31, IDOT's Second Mot. ¶ 10; R. 32, IDOT's Mem. at 11-12; R. 39, Fulgenzi's Reply at 10-11.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). As with a Rule 12(b)(6) motion to dismiss, all reasonable inferences are drawn in the plaintiff's favor, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting

*Twombly*, 550 U.S. at 570). Furthermore, "[a] document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Additionally, "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086 (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006)). If a plaintiff provides unnecessary facts in his complaint, the defendants may use those facts to show that he is not entitled to relief. *Id.* (citing *McGready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153-54 (7th Cir. 1995)).

## ANALYSIS

### I.   Section 1981 and Eleventh Amendment immunity

In Counts I and II, Plaintiff states claims of discrimination and retaliation pursuant to Section 1981 against IDOT and the IDOT Employees in their official capacities. (R. 30, Am. Compl. at 3.) Defendants argue that Plaintiff's Section 1981 claims against IDOT should be dismissed because they are barred by the Eleventh Amendment. (R. 32, IDOT's Mem. at 7; R. 35, Fulgenzi's Mem. at 4-5.) Defendants further argue that Plaintiff's Section 1981 claims against the IDOT Employees should be dismissed because they are redundant to Plaintiff's claims against IDOT and therefore also barred by the Eleventh Amendment.[3] (R. 32, IDOT's

---

[3] Fulgenzi also raises the argument that Plaintiff's Section 1983 claims against him are barred by the Eleventh Amendment. (R. 35, Fulgenzi's Mem. at 4-5.) Because Plaintiff does not bring his Section 1983 suit against Fulgenzi in his official capacity, however, the Court will not address this argument.

Mem. at 7-8; R. 35, Fulgenzi's Mem. at 5.)

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Generally, under the Eleventh Amendment, "a state may claim immunity from suit in federal court and must be dismissed from the litigation[,]" *Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991), "absent waiver by the State or valid congressional override[.]" *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945)).

"State agencies are treated the same as states" as "a state agency is the state for purposes of the eleventh amendment." *Kroll*, 934 F.2d at 907 (internal citations omitted) (citing *Davidson v. Bd. of Govs.*, 920 F.2d 441, 442 (7th Cir. 1990)). "This is so . . . 'regardless of the nature of the relief sought.'" *Id.* (quoting *Davidson*, 920 F.2d at 442). Here, Plaintiff has brought a Section 1981 action against IDOT. (R. 30, Am. Compl. at 3.) IDOT is an agency of the State of Illinois, 20 ILCS § 2705-15, and "in the absence of waiver or congressional abrogation, [IDOT] must be accorded the respect due a state under the eleventh amendment." *Kroll*, 934 F.2d at 909. The State of Illinois has not waived its Eleventh Amendment immunity as it relates to Section 1981 claims nor has Congress abrogated immunity for Section 1981 claims. 745 ILCS 5/1; *see also Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 641 n.5 (7th Cir. 2006) (dismissing Plaintiff's Section 1981 damages claims because proper defendant was immune from damages under the Eleventh Amendment). Accordingly, the Court finds that IDOT is immune from Plaintiff's Section 1981 claims.

"This bar remains in effect when State officials are sued for damages in their official capacity[,]" *Graham*, 473 U.S. at 169 (citations omitted), because "[a] suit against a governmental officer in his official capacity is really a suit against the entity of which the officer is an agent." *Franklin v. Zaruba*, 150 F.3d 682, 684 n.1 (7th Cir. 1998) (citing *Graham*, 473 U.S. at 165-66; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "In an injunctive or declaratory action grounded on federal law, [however], the State's immunity *can* be overcome by naming state officials as defendants." *Id.* at 169 n.18. That is, "[o]fficial-capacity suits may not be barred by the eleventh amendment insofar as they request prospective relief–i.e., an injunction or declaratory judgment and monetary damages that are 'ancillary' to either." *Kroll*, 934 F.2d at 908 (citing *Graham*, 473 U.S. at 169 n.18).

Here, Plaintiff's brings his Section 1981 claims against the IDOT Employees in their official capacities. (R. 30, Am. Compl. at 3.) Defendants argue that these claims are redundant to Plaintiff's Section 1981 claims against IDOT and should therefore be dismissed. (R. 33, IDOT's Second Mem. at 7-8.) In response, Plaintiff argues that he seeks injunctive relief. (R. 38, Pl.'s Resp. at 5.) Plaintiff failed to specify the type of relief sought in his Amended Complaint, however, and Defendants correctly point out that in his Original Complaint, Plaintiff did not make a "request for injunctive relief but rather [sought] the ' . . . maximum amount of damages as the law allows.'" (R. 40, IDOT's Mem. at 5.) Accordingly, the Court rejects Plaintiff's argument that he seeks injunctive relief against the IDOT Employees. The Court finds that Plaintiff's Section 1981 claims are barred by the Eleventh Amendment as to both IDOT and the IDOT Employees in their official capacities, and therefore dismisses Plaintiff's Section 1981 claims.

## II.    Prima facie case of discrimination under Title VII[4]

In Count I, Plaintiff also states a claim of discrimination against IDOT pursuant to Title VII.[5] (R. 30, Am. Compl. at 3.) Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging race discrimination under Title VII may establish a prima facie case of discrimination directly, through a defendant's admission, or indirectly through a burden-shifting approach. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006). Here, Plaintiff has not included in either of his complaints any allegations that Defendants admitted to discriminating against him on the basis of racial animus. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.") (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). Accordingly, the Court will assess

---

[4] Because Plaintiff brings his Title VII claims against the IDOT Employees in their official capacities, the Court does not address Defendants' arguments that the Title VII claims against the IDOT Employees should be dismissed because they are not Plaintiff's employer. (R. 32, IDOT's Mem. at 5; R. 35, Fulgenzi's Mem. at 3-4.) Such arguments would be proper were Plaintiff asserting Title VII claims against the IDOT Employees in their individual capacities. *See Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493-94 (7th Cir. 1998).

[5] Plaintiff's Title VII claims are also brought against the IDOT Employees in their official capacities. (R. 30, Am. Compl. at 3.) As previously noted, "[a] suit against a governmental officer in his official capacity is really a suit against the entity of which the officer is an agent." *Franklin*, 150 F.3d at 684 n.1 (citing *Graham*, 473 U.S. at 165-66; *Monell*, 436 U.S. at 690 n.55). Accordingly, the Court treats Plaintiff's Title VII claims against the IDOT Employees in their official capacities as claims against IDOT and dismisses the claims against the IDOT Employees in their official capacities.

whether Plaintiff has sufficiently alleged a prima facie case of discrimination under the indirect method.

To establish a prima facie case of discrimination under the indirect method of proof, a plaintiff must show that: "(1) she is a member of a protected class, (2) her job performance met [her employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burk*, 464 F.3d at 750-51 (citing *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997)). Defendants argue that Plaintiff has not stated a prima facie case of race discrimination under Title VII. (R. 32, IDOT's Mem. at 10-11.) Specifically, Defendants argue that Plaintiff has not established the fourth element of the prima facie test because he "cannot demonstrate that he was disparately disciplined based upon his race because all ETP Drivers, including Plaintiff, who attended the November 23, 2009 meeting received the same warning." (*Id.* at 10.) Essentially, Defendants' argument assumes that Plaintiff claims he was only discriminated against at the November 23, 2009 meeting. (*Id.* at 11.) Plaintiff's Amended Complaint, when read liberally however, alleges that he was discriminated against in the following instances: when he was suspended in August 2009, (R. 30, Am. Compl. ¶¶ 4, 6-7), when Duda made a humiliating statement to him on November 23, 2009, (*id.* ¶ 5; R. 38, Pl.'s Resp. at 4), and when evidence of IDOT's internal investigation was withheld from him and the EEOC. (R. 30, Am. Compl. ¶¶ 8-9.)

As to Plaintiff's claim of discrimination based on the August 2009 suspension, the Court finds that Plaintiff has alleged sufficient facts to state a claim for relief that is plausible on its face. First, Plaintiff has alleged that he is a member of a protected class. (R. 1, Compl. at 7.)

Second, Plaintiff has alleged that he suffered an adverse employment action. (*Id.* at 9.) Third,

Plaintiff has also alleged that similarly situated non-black highway maintainers were treated more

favorably than he was in that they received suspension times of shorter durations. (*Id.* at 10-12.)

With respect to whether Plaintiff's job performance met his employer's expectations, the Court

notes that while Plaintiff did not make this allegation in either the Original or Amended

Complaint, Plaintiff did raise this allegation in his response and provided a copy of a

performance evaluation for the period of July 1, 2009, through June 30, 2010. (R. 38, Pl.'s Resp.

at 3-4; R. 38-1, Def.'s Eval.) According to this evaluation, Plaintiff performed his job at a

satisfactory level during this time period. (*Id.*) The Court finds that the performance evaluation

in question is central to Plaintiff's claim, as his substantive claim of discrimination will turn on

whether he can establish, through the indirect method of proof, that his job performance met his

employer's expectations.[6] The Court, therefore, considers the performance evaluation attached to

Plaintiff's response and finds that Plaintiff has sufficiently alleged that his performance met his

--------

[6] Defendants fail to make any arguments as to why the performance evaluation should be excluded from the Court's consideration. Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a court may only consider the plaintiff's complaint. *Rosenblaum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Rule 10(c) provides, however, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Seventh Circuit precedent "makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions." *Rosenblaum*, 299 F.3d at 661. Specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This is a narrow exception that "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "This rule–which typically applies to attachments to motions to dismiss–logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. Mar. 23, 2010) (citing *Krok v. Burns & Wilcox, Ltd.*, No. 98-5902, 1999 WL 262125, at *6 (N.D. Ill. Apr. 16, 1999)).

employer's expectations.

As to Plaintiff's claims of discrimination based on the statement Duda made to him on November 23, 2009, the Court agrees with Defendants that Plaintiff cannot establish a prima facie case of discrimination. Plaintiff has alleged that all ETP Drivers received the same warnings at the November 23, 2009 meeting. (R. 1, Compl. at 9, 28.) Accordingly, Plaintiff has pled himself out of court as he will not be able to establish that similarly situated non-black ETP Drivers were treated more favorably than he was at the meeting. With regards to Plaintiff's claim of discrimination based on the withholding of evidence in the EEOC investigation, the Court also finds that Plaintiff has failed to allege any facts that similarly situated employees received more favorable treatment. Therefore, the Court dismisses Plaintiff's Title VII discrimination claims to the extent they are based on Duda's statement to him on November 23, 2009 or the withholding of evidence, but declines to dismiss Plaintiff's Title VII discrimination claims to the extent they are based on his August 2009 suspension.

## III.      Prima facie case of retaliation under Title VII

In Count II, Plaintiff also brings forth a claim of retaliation pursuant to Title VII against IDOT. (R. 30, Am. Compl. at 3.) Plaintiff appears to base his retaliation claim on his August 2009 suspension, (*id.* ¶¶ 4, 6-7), Duda's statement to him on November 23, 2009, (*id.* ¶ 5), and on IDOT's alleged withholding of evidence from both Plaintiff and the EEOC. (*Id.* ¶¶ 8-9.) Title VII prohibits an employer from discriminating against any of his employees because he has opposed any practice made unlawful by Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The purpose of

Title VII's anti-retaliation provision is "to prevent employer interference with unfettered access to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Based on the textual distinction between Title VII's antiretaliation and discrimination provisions and the antiretaliation's purpose, the Supreme Court has held that "'the antiretaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment.' Rather, Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Thompson v. N. Am. Stainless, LP*, 131 S.Ct. 863, 868 (2011) (internal citation omitted) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 64, 68).

To establish a prima facie case of retaliation, a plaintiff may use either the "direct or indirect method of proof." *Stephens*, 569 F.3d at 786. Under the direct method, a plaintiff "must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two." *Id.* (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008)). Under the indirect method, a plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; (3) he was performing his job satisfactorily, and (4) he was treated "less favorably" than a similarly situated employee who did not complain of discrimination. *Id.* (citing *Argyropoulos*, 539 F.3d at 733.)

Defendants argue that Plaintiff fails to state a claim for retaliation under Title VII. As an initial matter, Defendants do not contest that Plaintiff has engaged in statutorily protected

activity. Additionally, Defendants do not raise any arguments as to whether Plaintiff's August 2009 suspension, Duda's November 23, 2009 statement to Plaintiff, or IDOT's alleged withholding of evidence from both Plaintiff and the EEOC constitute adverse employment actions. Rather, Defendants conflate the elements required to establish a prima facie case of retaliation under both methods, (R. 32, IDOT's Mem. at 5-6), and they appear to argue that under the direct method of proof, Plaintiff has failed to meet the third element of a retaliation claim. (R. 32, IDOT's Mem. at 5-7; R. 40, IDOT's Reply at 3-4.) According to Defendants, "Plaintiff's claims [sic] lacks any allegations that suggest a causal link between the filing of his charges in 2004, 2005, and 2006 and his discipline in 2009, leaving him without a requirement [sic] element of his retaliation claim against IDOT . . . [and] . . . with a period of time years [sic] greater than the 4 months the [Seventh Circuit] has suggested, as a matter of law, negates a casual connection." (R. 32, IDOT's Mem. at 7; R. 40, IDOT's Reply at 4.)

The cases cited by Defendants in support of their arguments, however, do not support the bright line rule they suggest. *See Dey v. Col Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994); *Filipovic v. K&R Exp. Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999); *Davidson v. Midelfort Clinic*, 133 F.3d 499, 511 (7th Cir. 1998); *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 481 (7th Cir. 2009). The Seventh Circuit has held that where an adverse action takes place four or five months after the employee took part in the statutorily protected activity, "the order in which the events occurred does not by itself suggest a causal link between them." *Davidson*, 133 F.3d at 511 (internal citations omitted). The Seventh Circuit has also cautioned, however, that this "is not to say that the plaintiff is precluded from making out a prima facie case of retaliation, but rather that additional proof of a causal nexus is necessary." *Id.* (internal citations omitted); *see*

*also Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n.6 (7th Cir. 1996) ("If the plaintiff has evidence from which one may reasonably infer that her former employer waited in the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward."). In other words, contrary to Defendant's suggestion, a period of time greater than four months between the statutorily protected activity and the adverse employment action does not necessarily, as a matter of law, negate a causal connection.

Unlike all the cases cited by Defendants, which were decided on summary judgment, on a motion to dismiss the appropriate inquiry is whether a plaintiff provided "enough detail to give the defendant fair notice of what the claim is." *Tamayo*, 526 F.3d at 1083. Plaintiff's allegations must also "show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* Whether these allegations will be supported by sufficient evidence on summary judgment is an entirely different matter. Here, Plaintiff has alleged that he filed EEOC charges in 2004, 2005, 2006, and 2010. (R. 1, Compl. at 9, 45-48.) Plaintiff has also alleged that subsequent to the filing of the EEOC charges, he has suffered materially adverse employment actions in the form of a suspension, "a humiliating statement" by Duda, and the withholding of evidence from him and the EEOC. (*Id.* at 9; R. 30, Am. Compl. ¶¶4-9; R. 38, Pl.'s Resp. at 4.) And, as discussed above, Plaintiff has also alleged that he was performing his job at a satisfactory level during the relevant time period. The Court finds that Plaintiff has alleged sufficient facts to state a claim of retaliation. *See Tamayo*, 526 F.3d at 1085 (finding that plaintiff's complaint alleged enough facts to state a claim of retaliation where plaintiff alleged she had performed her job satisfactorily, she had filed EEOC charges, and subsequent to the filing of the EEOC charges, plaintiff was subjected to a number of adverse employment actions). Accordingly, the Court

declines to dismiss Plaintiff's Title VII claim of retaliation against IDOT.

## IV.    Section 1983 claims of discrimination and retaliation

In Counts III and IV, Plaintiff brings claims of disparate treatment and retaliation against the IDOT Employees in their individual capacities. (R. 30, Am. Compl. at 3-4.) Although Plaintiff has not articulated the constitutional basis for his Section 1983 claims, Plaintiff does allege that he has been discriminated against on the basis of his race. (R. 1, Compl. at ¶4, *id.* at 7, 12.) "Allegations of racial discrimination unquestionably invoke the Equal Protection Clause of the Fourteenth Amendment–a right, for its part, secured by the Constitution." *Clarry v. Hatch*, No. 04-4167, 2005 WL 1266947, at *2 (May 9, 2005, S.D. Ill. 2005) (quotation marks omitted). Because Defendants fail to raise arguments to the contrary, the Court assumes, without deciding, that Plaintiff's Section 1983 allegations invoke the Equal Protection Clause of the Fourteenth Amendment.

With respect to Plaintiff's Section 1983 claim of discrimination, the Seventh Circuit instructs that "the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003). Accordingly, the Court adopts its Title VII discrimination analysis and finds that Plaintiff has alleged sufficient facts to state a plausible Section 1983 claim of race discrimination based on his August 2009 suspension. Defendants argue that Plaintiff's Section 1983 claims against O'Keefe, Means, and Fulgenzi should be dismissed because Plaintiff has not alleged that Means, O'Keefe, or Fulgenzi were personally involved in the alleged adverse action that took place on November 23, 2009. (R. 32, IDOT's Mem. at 9-10; R. 35, Fulgenzi's Mem. at 5-6.) Defendants' argument is based on the premise that the only adverse action Plaintiff complains about is what took place during the

November 23, 2009 meeting. (R. 32, IDOT's Mem. at 9; R. 35, Fulgenzi's Mem. at 6.) As discussed above, however, the proper focus is on the August 2009 suspension, rather than what occurred at the November 23, 2009 meeting.

"For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation. 'Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). At this stage of the proceedings, the Court finds that Plaintiff has sufficiently alleged the personal involvement of O'Keefe and Fulgenzi in his August 2009 suspension in that they authored and/or signed his suspension orders. With respect to Means, however, Plaintiff has not alleged any facts to suggest that she was personally involved in the August 2009 suspension. Accordingly, the Court dismisses Plaintiff's Section 1983 discrimination claim against Means.

With respect to Plaintiff's Section 1983 retaliation claim against the IDOT Employees, Defendants do not make a separate argument and rely on their general argument that Plaintiff's Section 1983 claims against O'Keefe, Means, and Fulgenzi should be dismissed because Plaintiff has not alleged that any of them were personally involved in the alleged adverse action that took place on November 23, 2009. (R. 32, IDOT's Mem. at 9-10; R. 35, Fulgenzi's Mem. at 5-6.) As discussed above, Plaintiff bases his retaliation action claims on his August 2009 suspension, (R. 30, Am. Compl. ¶¶ 4, 6-7), Duda's statement to him on November 23, 2009, (*id.* ¶ 5), and IDOT's alleged withholding of evidence from both Plaintiff and the EEOC. (*Id.* ¶¶ 8-9.) Because Plaintiff has alleged the personal involvement of both O'Keefe and Fulgenzi in his

August 2009 suspension, the Court declines to dismiss the Section 1983 claim of retaliation against them. As to Means, although Plaintiff alleges that Means was involved in the internal investigation conducted by the Bureau, Plaintiff fails to allege that Means was involved in the actual withholding of such evidence from the EEOC. Rather, the Complaint shows that Simon, the Bureau Chief, responded to the EEOC's requests. Accordingly, the Court dismisses Plaintiff's Section 1983 retaliation claim against Means.

## V.     State law claim of intentional infliction of emotional distress

Finally, in Count V, Plaintiff alleges a claim of intentional infliction of emotional distress against the IDOT Employees in their individual capacities. (R. 30, Am. Compl. at 4.) Under Illinois law, a claim for intentional infliction of emotional distress "must be specific, and detailed beyond what is normally considered permissible in pleading a tort action." *Reilly v. Wyeth*, 876 N.E.2d 740, 755 (Ill. App. Ct. 1st Dist. 2007) (citations and internal quotation marks omitted). To state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 1st Dist. 2000) (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. App. Ct. 1st Dist. 1999)).

"Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Id.* Recovery under this theory "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions or trivialities.'" *Id.* (quoting *Pub. Fin.*

21

*Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill 1976)). "Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotation marks omitted). "The distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id.* In Illinois "courts often hesitate to find a claim for intentional infliction of emotional distress in employment situations" because of the concern that if "everyday job stresses . . . could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Reilly*, 876 N.E.2d at 755 (quoting *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. 1st Dist. 1999)).

Here, Plaintiff has failed to allege any facts supporting his claim of intentional infliction of emotional distress. Plaintiff does not allege any facts in his Amended Complaint to suggest that Defendant's conduct was extreme and outrageous, that Defendants intended to inflict severe emotional distress, or that any such conduct caused him severe emotional distress in the form of anxiety or humiliation. Plaintiff's allegations in Count V are "[t]hreadbare recitals of a cause of action" not even supported by mere conclusory statements, and are therefore are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555). Although Plaintiff argues in response that Defendants knew he suffered from emotional distress because Plaintiff previously made a similar claim in an earlier suit, the Court notes that the prior suit contradicts Plaintiff's claim. In *Titus v. Illinois Department of Transportation*, No. 06-2508, 2007 WL 2994079, at *10 (N.D. Ill. Oct. 11, 2007), the court found that Plaintiff had failed to allege, let alone provide evidence, that would support his claim for intentional infliction of emotional distress. Under these circumstances, it cannot be said that

Defendants should have known that their conduct would cause Plaintiff severe emotional distress. Therefore, the Court finds that Plaintiff has failed to allege sufficient facts to state a claim of intentional infliction of emotional distress. *See Welsh*, 713 N.E.2d at 684-85 (affirming dismissal of plaintiff's complaint where complaint contained no factual allegations from which the level of severity of the emotional distress could be inferred).[7] Accordingly, the Court grants Defendants' motions to dismiss Count V of Plaintiff's complaint.

## VI.    Claims brought pursuant to Ethics Act and IDOT's Administrative Rules

Although not pleaded as Counts in his Amended Complaint, Plaintiff also appears to allege violations of the Ethics Act and IDOT's Administrative Rules. (R. 30, Am. Compl. ¶¶ 2-3.) To the extent Plaintiff brings such claims against IDOT, the Court dismisses them because they are barred by the Eleventh Amendment. As discussed above, a suit may proceed against a state agency in federal court when the State has waived its immunity or Congress has abrogated the State's immunity. *Graham*, 473 U.S. at 169. Here, Plaintiff appears to argue that the State has waived its immunity with respect to a suit alleging a violation of administrative rules. (R. 38, Pl.'s Resp. at 9.) The State of Illinois, however, has not waived its Eleventh Amendment immunity as it relates to the Ethics Act or a suit brought pursuant to IDOT's Administrative

---

[7] Seeking to avoid this result, Plaintiff argues that his claim should not be dismissed because it has not been preempted by the Illinois Human Rights Act ("IHRA"). (R. 38, Pl.'s Resp. at 9.) In support, Plaintiff relies on case law finding that the IHRA does not preclude tort claims where a plaintiff can allege facts sufficient to establish the elements of a tort. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602-05 (7th Cir. 2006) (finding that where plaintiff's intentional infliction of emotional distress claim rested on behavior that was independent of the IHRA, plaintiff's claim was not preempted). Plaintiff's argument is misplaced, however, because he has not brought a claim pursuant to the IHRA. Additionally, as noted above, the Court finds that Plaintiff has not alleged sufficient facts to support a claim for intentional infliction of emotional distress.

Rules. *See* 745 Ill. Comp. Stat. 5/1; 5 Ill. Comp. Stat. 430/15-25 ("The circuit courts of this State shall have jurisdiction to hear cases brought under [the Ethics Act]."); *see also Block v. Ill. Sec'y of State*, No. 09-117, 2010 WL 706043 (S.D. Ill. Feb. 24, 2010).

To the extent Plaintiff brings such claims against the IDOT Employees, the Court dismisses those claims on the basis that he has failed to set forth any factual allegations to support such claims. Accordingly, Plaintiff's claims pursuant to the Ethics Act or IDOT's Administrative Rules are dismissed.

## CONCLUSION

For the foregoing reasons, IDOT's, Duda's, O'Keefe's, and Means' motion to dismiss (R. 31) is GRANTED as to Plaintiff's Section 1981 claims in Counts I and II, as to Plaintiff's Title VII claims in Counts I and II against Duda, O'Keefe, and Means in their official capacities, as to Plaintiff's Section 1983 claims in Counts III and IV against Means, as to Plaintiff's intentional infliction of emotional distress claim in Count V, and as to Plaintiff's claims brought pursuant to the Ethics Act or IDOT's Administrative Rules. The motion is DENIED as to Plaintiffs's Title VII claims based on his August 2009 suspension in Counts I and II, and as to Plaintiff's Section 1983 claims in Counts III and IV against O'Keefe.

Fulgenzi's motion to dismiss (R. 34) is GRANTED as to Plaintiff's Section 1981 claims in Counts I and II, as to Plaintiff's Title VII claims in Counts I and II against Fulgenzi in his official capacity, as to Plaintiff's intentional infliction of emotional distress claim in Count V, and as to Plaintiff's claims brought pursuant to the Ethics Act or IDOT's Administrative Rules. The motion is DENIED as to Plaintiffs's Title VII claims based on his August 2009 suspension in Counts I and II, and as to Plaintiff's Section 1983 claims in Counts III and IV against Fulgenzi.

The parties are requested to reevaluate their settlement positions in light of this opinion which has substantially narrowed the size and scope of available damages to Plaintiff. The parties are requested to exhaust all efforts to settle the remaining issues in this lawsuit prior to the next status hearing. The Court strongly encourages Plaintiff to seek and secure counsel should he decide to proceed with this suit. The parties shall appear for a status hearing on January 5, 2012, at 9:45 A.M. to set a firm litigation schedule, unless this Court is informed that this lawsuit has been settled.

Entered:

**Judge Ruben Castillo**
**United States District Court**

**Date:** December 14, 2011